COURT OF APPEALS
DECISION
DATED AND FILED

January 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP297**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV91

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN EX REL. DANIEL C. BUCK,

    PETITIONER-APPELLANT,

 V.

BRIAN HAYES ADMINISTRATOR OF THE DIVISION OF HEARINGS AND APPEALS, WISCONSIN DEPARTMENT OF ADMINISTRATION,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Daniel C. Buck appeals a circuit court order that affirmed the decision by the Division of Hearings and Appeals within the state Department of Administration to revoke Buck's probation and dismissed this certiorari action.  Buck argues that his due process rights were violated during the revocation proceedings.  He also contends that the Division's decision was arbitrary, capricious, and unreasonable in rejecting an available and appropriate Alternative To Revocation (ATR).  For the reasons set forth in this opinion, we reject these contentions.  We affirm.

¶2      In February 2015, Buck was convicted of incest with a child.  In March 2015, the circuit court withheld sentence and placed Buck on probation for ten years.  In September 2016, Buck admitted to violating the rules of his probation and received a formal ATR.

¶3      In August 2017, a search of Buck's home resulted in the discovery of substances, electronic devices, and sex items.  Buck admitted that he had bought what he believed were drugs with the intent to sell them; used marijuana; consumed alcohol; and had sexual contact with N.H.

¶4      In October 2017, the Department of Corrections (DOC) initiated revocation proceedings, alleging eighteen rule violations by Buck.  DOC asserted that Buck violated his rules of supervision by:  (1) possessing photographs of minors; (2) fleeing from his agent; (3) lying to his agent; (4) having contact with N.H.; (5) consuming alcohol; and (6) and (7) consuming what he believed to be drugs.  It also asserted in allegations (8), (9), and (10) that Buck possessed with the intent to sell what he believed to be drugs; in allegations (11) and (12) that he possessed drugs; and, in allegations (13) through (18), that Buck had contact with N.H.; had sexual intercourse without his agent's consent; possessed sexual items;

2

possessed pornography; was terminated from sex offender treatment; and failed his ATR. Prior to the revocation hearing, Buck submitted a proposed ATR prepared by an addiction counselor, recommending that Buck engage in substance abuse treatment.

¶5    The revocation hearing was held before an Administrative Law Judge (ALJ) in November 2018. At the conclusion of the hearing, the ALJ ordered Buck's probation revoked. The ALJ found that the DOC had proven all of its allegations against Buck except for allegation (1), possessing images of minors. The ALJ also found that no alternative to revocation was appropriate. Buck pursued an administrative appeal, and the administrator sustained the revocation. Buck then filed this certiorari action in the circuit court.

¶6    In a thorough and well-reasoned decision, the circuit court affirmed the revocation and dismissed this action. The court agreed with Buck that the ALJ erred by admitting State Crime Laboratory test results of the substances seized from Buck's home. It found that the test results were inadmissible hearsay that did not fall within any hearsay exception. The court also found, however, that the only allegations that relied on the test results were allegations (11) and (12), possession of drugs. The court found that the Division properly revoked Buck's probation based on the remaining violations. Buck appeals.

¶7    On certiorari review of a probation revocation decision, we apply the same standard as the circuit court, and we review the Division's decision, not the circuit court's. *See* ***State ex rel. Greer v. Wiedenhoeft***, 2014 WI 19, ¶34, 353 Wis. 2d 307, 845 N.W.2d 373. Our review is limited to whether: (1) the Division kept within its jurisdiction; (2) the Division acted according to law; (3) the decision was arbitrary, oppressive, or unreasonable and represented the Division's will and

not its judgment; and (4) the evidence was such that the decision in question might reasonably be made. *See State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶15, 257 Wis. 2d 40, 654 N.W.2d 438.

¶8 Buck argues that the State Crime Laboratory test results were inadmissible hearsay and that the ALJ therefore erred by admitting them. *See State v. Williams*, 2002 WI 58, ¶¶38-49, 253 Wis. 2d 99, 644 N.W.2d 919 (concluding that State Crime Laboratory test results did not fall within business records exception to hearsay). Buck contends that, in addition to being a procedural error, the admission of the test results without testimony by the analyst who performed the tests violated Buck's constitutional right to confrontation. *See State v. Nieves*, 2017 WI 69, ¶18, 376 Wis. 2d 300, 897 N.W.2d 363 ("Both the Sixth Amendment to the United States Constitution and the Wisconsin Constitution guarantee a criminal defendant the right to confront witnesses who testify against the defendant at trial."). He argues that he was entitled to minimum procedural safeguards during revocation proceedings, which he asserts include the right to confrontation. Buck contends that, without the test results, there was less evidence to support allegations (8) through (10), that he possessed drugs with the intent to sell them. He argues that, without the test results, the only evidence presented to support those allegations was Buck's statements to his agent that he possessed what he believed were drugs with the intent to sell them. And, he contends, there was no evidence to support allegations (11) and (12), possession of drugs.

¶9 The Division responds that any error in admitting the State Crime Laboratory test results was harmless because there is no reasonable possibility that the test results contributed to the outcome. *See State ex rel. Simpson v. Schwarz*, 2002 WI App 7, ¶16, 250 Wis. 2d 214, 640 N.W.2d 527 (circuit court error, including constitutional error, is generally subject to a harmless error analysis; error

is harmless if there is no reasonable possibility that the error contributed to the outcome). It contends that the test results were irrelevant to allegations (8) through (10), the only drug violations at issue in this appeal.[1] It contends that, because allegations (8) through (10) were that Buck possessed *what he believed to be drugs* with intent to sell them, the Division's findings that Buck committed those violations did not depend on whether or not the substances were, in fact, drugs.

¶10    We agree with the Division that any error in admitting the State Crime Laboratory test results at the revocation hearing was harmless.[2] *See id.* As the Division points out, the only drug allegations at issue, allegations (8) through (10), did not depend on evidence as to whether or not the substances were, in fact, drugs. Rather, those allegations were that Buck possessed *what he believed* were drugs. Thus, the test results for the substances were unnecessary for the Division to find that Buck committed those violations. As Buck appears to recognize, Buck's admission that he possessed what he believed were drugs with the intent to sell them was sufficient evidence of those violations.[3] Accordingly, there is no reasonable

---

[1] The Division does not dispute that the State Crime Laboratory test rests should not have been admitted into evidence and that, without the test results, the evidence was insufficient to prove allegations (11) and (12), possession of drugs.

[2] Because we conclude that any error in admitting the test results was harmless, we do not reach the parties' dispute as to whether a constitutional violation occurred.

[3] In reply, Buck asserts that the rule of corroboration should apply to revocation proceedings and, apparently, takes the position that Buck's admission to his agent was not corroborated. *See Holt v. State*, 17 Wis. 2d 468, 480, 117 N.W.2d 626 (1962) (in a criminal trial, "there must be some corroboration of the confession in order to support a conviction"). This argument was raised for the first time in the reply brief, and we therefore do not consider it. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶30 n.6, 305 Wis. 2d 658, 741 N.W.2d 256 ("'It is a well-established rule that we do not consider arguments raised for the first time in a reply brief.'" (quoted source omitted)). Moreover, Buck's argument that the corroboration rule should apply to revocation proceedings, and his implication that it was not met in this case, is insufficiently developed, and we also reject it on that basis. *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (we may decline to consider arguments that are insufficiently developed).

possibility that the erroneous admission of the State Crime Laboratory test results contributed to the Division's determinations as to allegations (8), (9), and (10).

¶11    Next, Buck argues that his due process rights were violated when the Division and the DOC denied Buck's requests to allow him to have independent testing and forensic analysis conducted on the substances and electronic devices seized from Buck's home.  Buck argues that he had a due process right to disclosure of the evidence against him prior to the revocation hearing.  *See Greer*, 353 Wis. 2d 307, ¶63 (one of the due process rights afforded probationers during revocation proceedings is "disclosure to the probationer of the evidence against him [or her]"). From that premise, Buck contends that disclosure of evidence prior to the revocation hearing is meaningless if a probationer is not afforded the opportunity to independently test evidence that is material to the revocation proceedings.  Buck also contends that a due process violation should be recognized by balancing Buck's substantial personal interest in independent testing of the government's evidence against him with the low risk and cost to the government in allowing the testing.  In support, Buck cites the due process analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (to determine what process is due, courts consider:  the private interest at stake, the risk of erroneous deprivation of that interest and the probable value of additional safeguards, and the government's interest and burdens that the additional procedural requirements would entail).

¶12    The Division argues, again, that any error in denying Buck's requests to independently test evidence was harmless because it did not affect the body of evidence supporting revocation.  *See Simpson*, 250 Wis. 2d 214, ¶16.  It contends that only one violation is necessary to support revocation, *see State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 724, 566 N.W.2d 173 (Ct. App. 1997) ("Violation of a condition is both a necessary and a sufficient ground for the revocation of

probation." (quoted source omitted)), and points out that Buck did not contest eight of the violations alleged by the DOC and that several additional violations were found based on other evidence at the hearing. It contends that revocation was warranted absent the three drug violations and single pornography violation related to the evidence that Buck sought to independently test.

¶13 We agree with the Division that any error in denying Buck's requests to allow independent tests of the evidence against him was harmless.[4] *See id.* As to Buck's request to independently test the substances seized from his home, we have already concluded that whether or not those substances were drugs was irrelevant to the only drug allegations at issue on appeal. Thus, there is no reasonable possibility that independent testing of the substances would have changed the determination that Buck committed those violations. As to Buck's request to conduct an independent forensic analysis of the electronic devices seized from his home, we agree with the Division that there is no reasonable possibility that an independent analysis would have altered the outcome. Only one violation, possession of pornography, was found against Buck based on the evidence from the electronic devices. Buck admitted eight violations, and has not challenged three additional violations found by the Division that were not related to the evidence he sought to test. Accordingly, there is no reasonable possibility that the Division would not have found a basis to revoke Buck's probation had Buck conducted an

---

[4] Again, because we conclude that any error in denying independent testing was harmless, we do not reach the parties' dispute as to whether a constitutional violation occurred.

7

independent forensic analysis of the electronic devices seized from his home to seek to challenge the single violation based on possession of pornography.[5]

¶14    Finally, Buck contends that the revocation of his probation was arbitrary, capricious, and unreasonable because the Division disregarded Buck's proposed ATR. Buck points out that he had already spent fifteen months in custody awaiting the revocation hearing, and contends that he presented the Division with a reasonable alternative treatment proposal that recommended substance abuse treatment rather than revocation. He contends that the time he already served, together with his proposed alternative treatment proposal, served as a reasonable alternative by providing a sufficient punitive sanction and treatment plan. He argues that the Division's decision rejecting his proposed ATR was not a reasonable decision based on the facts. *See Von Arx v. Schwartz*, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994) (proper exercise of discretion in revoking probation contemplates reasoning based on the facts of record). Buck contends that the Division erred by failing to specifically consider all of the relevant facts, including the time he already served in confinement and the fact that his treatment proposal

---

[5] Buck argues in his reply brief that admission of the test results and forensic computer evidence was not harmless because it may have affected the Division's decision rejecting all alternatives to revocation. Buck argues that, as a criminal sentencing may not be based on inaccurate information, *see State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1, a revocation should not stand if it was based on inaccurate information as to a probationer's rule violations. He cites *State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 543, 217 N.W.2d 641 (1974), for the proposition that, to properly exercise discretion during revocation proceedings, the Division must "know not only that some violation was committed but also … know accurately how many and how serious the violations were." Below, we address whether the Division properly exercised its discretion by determining that Buck's rule violations warranted revocation, excluding any consideration of the State Crime Laboratory test results that the Division has not disputed were improperly admitted and any consideration of the single violation as to possession of pornography related to the evidence Buck sought to independently analyze. Because we conclude that the Division properly exercised its discretion to revoke Buck's probation based on the evidence not challenged on appeal, we conclude that the asserted errors were harmless as to the Division's revocation decision.

was prepared by an addiction counselor. *See State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 544-45, 217 N.W.2d 641 (1974) (if appropriate alternative to revocation is presented, alternative should be considered).

¶15     The Division responds that its decision to revoke Buck's probation was reasonable and supported by substantial evidence. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 66, 267 N.W.2d 17 (1978) (revocation upheld were the evidence was sufficient to support findings underlying revocation order, and discretion was exercised on a rational basis). It argues that it properly considered Buck's original offense and his intervening conduct, and determined that revocation was necessary to protect the public and to avoid depreciating the seriousness of the violations. It also asserts that it properly considered Buck's proposed ATR and explained why it determined that another ATR, after the unsuccessful ATR imposed for probation violations in 2016, was not appropriate.

¶16     We conclude that the Division properly exercised its discretion by revoking Buck's probation based on the fifteen violations that were established independent of the evidence disputed on appeal. *See Plotkin*, 63 Wis. 2d at 542-43 (once violations have been established, the question of whether to revoke probation is discretionary). The discretionary determination whether to revoke supervision based on rule violations "involves the application of expertise by the [Division] in making a prediction as to the ability of the individual to live in society without committing antisocial acts." *Id.* at 543. Revocation is appropriate if it is based on a finding that it is necessary to protect the public, to afford treatment needed in a confined setting, or to not unduly depreciate the seriousness of the violation. *Id.* at 544. Here, the decisions by the ALJ and administrator explained that the Division determined revocation was necessary due to Buck's numerous and serious rule violations. The decisions noted that Buck's rule violations included lying to his

9

agent, sexual intercourse without agent approval, possessing sexual items, possessing drugs with the intent to sell them, and failing his formal ATR and sex offender treatment programming.[6] They determined that those actions showed that Buck was a high risk to reoffend and that revocation was warranted. They also considered the seriousness of Buck's underlying crime of incest with a child, and his continued rule violations while engaging in sex offender treatment.

¶17 Additionally, the decisions by the ALJ and the administrator specifically considered and rejected Buck's proposed ATR. They explained that Buck had already been afforded the opportunity to participate in an ATR and sex offender programming and had been unsuccessful. They found that Buck's proposed alternative treatment plan of substance abuse treatment in the community would not sufficiently protect the public and would unduly depreciate the seriousness of the violations. They also explained that Buck's proposed ATR was insufficient in that it focused on Buck's substance abuse treatment needs rather than on his sex offender treatment needs. The decisions noted that Buck's underlying crime was for incest with a child and that Buck committed numerous violations of sex offender rules. They found that Buck's treatment needs could best be met in confinement and that revocation was necessary as a sanction and to impress upon Buck the need to comply with his rules of supervision. While Buck contends that the Division should have found that Buck's fifteen months in confinement was a sufficient sanction and that his proposed ATR was reasonable, he has not established that the Division was required to make those findings. *Von Arx*, 185 Wis. 2d at 655 (in a challenge to a revocation decision, "the probationer bears the burden of proving

---

[6] While the Division also cited Buck's possession of other substances and pornography in its decisions, we conclude that the Division's decision was a proper exercise of discretion without considering those facts.

that the decision was arbitrary and capricious"). Because the Division relied on the facts in the record and applied the proper legal standard to reach a reasonable decision, it properly exercised its discretion. *See id*. at 656 (discretionary decision properly reached if it "contemplates a reasoning process based on the facts of record 'and a conclusion based on a logical rationale founded upon proper legal standards'" (quoted source omitted)). "An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion." *Id.*

## CONCLUSION

¶18    For the reasons stated, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-2018).